## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TABITHA A. LIGHT, *o/b/o* K.G.L.,

    Plaintiff,

  v.

KILOLO KIJAKAZI,[1]

    Defendant.

CIVIL ACTION NO. 3:21-CV-00987

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Tabitha A. Light ("Light") brings this action on behalf of her minor son ("K.G.L.") under section 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Childs' Supplemental Security Income ("SSI") on behalf of K.G.L. under Title XVI of the Social Security Act. (Doc. 1). For the following reasons, the Commissioner's decision will be **AFFIRMED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

On June 4, 2019, Light filed an application for benefits under Title XVI of the Social Security Act on behalf of K.G.L. for SSI benefits alleging an onset date of April 7, 2019. (Doc. 10-2, at 16). Light's application for benefits was initially denied on November 6, 2019, and upon reconsideration on June 16, 2020. (Doc. 10-2, at 16). Light filed a timely request for a

---

[1] The Court has amended the caption to replace, as the named defendant, Social Security Commissioner Andrew M. Saul, with his successor, Social Security Commissioner Kilolo Kijakazi. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

hearing, which Administrative Law Judge Scott M. Staller ("ALJ") held on October 5, 2020. (Doc. 10-2, at 16). In a November 16, 2020, written decision, the ALJ determined that K.G.L. is not disabled and therefore not entitled to benefits or income under Title XVI. (Doc. 10-2, at 24). On April 15, 2021, the Appeals Council subsequently denied Light's request for review. (Doc. 10-2, at 2).

On June 3, 2021, Light commenced the instant action. (Doc. 1). The Commissioner responded on October 6, 2021, providing the requisite transcripts from K.G.L.'s disability proceedings. (Doc. 9; Doc. 10). The parties then filed their respective briefs, with Light raising two principal bases for reversal or remand. (Doc. 13; Doc. 16). This matter is now ripe for decision.

## II.    STANDARD OF REVIEW

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and the Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  A claimant under the age of 18 ("child") shall be considered disabled under Title XVI of the Social Security Act if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. §416.906. Notwithstanding the above, no child who engages in substantial gainful activity, as defined by the Social Security regulations, may be found disabled. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. §416.906.

The ALJ employs a three-step evaluation process to determine whether a child is eligible for SSI payments because of disability. As part of this analysis, the ALJ must sequentially determine: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a medically determinable, severe impairment; (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in  20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924. If the ALJ finds that the child is not disabled at any point in the sequence, review does not proceed further. 20 C.F.R. § 416.924.

In determining functional equivalence, the ALJ evaluates the following six domains of functioning: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An impairment is functionally equal to a listed impairment when it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A marked limitation is more than moderate but less than extreme. 20 C.F.R. § 416.926a(e)(2)(ii). An impairment that only meets some of the criteria of a listed impairment, "no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

     "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether K.G.L. is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

- 4 -

In reviewing the ALJ's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the ALJ. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Rather, the court reviews the ALJ's findings to determine whether they were supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552 (internal quotations omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the decision of the ALJ is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

For effective judicial review to take place, the court "need[s] from the ALJ not only an expression of the evidence [she] considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

## III.     THE ALJ'S DECISION

The ALJ proceeded through the three-step sequential evaluation process to determine whether K.G.L., as an individual under the age of eighteen (18), is disabled. 20 C.F.R. § 416.924(a); (Doc. 10-2, at 16-24). At step one, the ALJ concluded that K.G.L. has not been engaged in any substantial gainful activity since his application date of June 4, 2019. (Doc. 10-2, at 17). The ALJ then proceeded to step two and determined that K.G.L. has the following severe impairments: autism spectrum disorder, speech and language impairment,

attention deficit hyperactivity disorder ("ADHD"), a disruptive mood dysregulation disorder, oppositional defiant disorder, and a depressive disorder. (Doc. 10-2, at 17). Next, at step three, the ALJ determined that K.G.L. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. (Doc. 10-2, at 17-18). Specifically, the ALJ considered Listings 112.02 – Neurocognitive disorders; 112.04 – Depressive, bipolar, and related disorders; 112.08 – Personality and impulse-control disorders, 112.10 – Autism Spectrum Disorder, and 112.11 – Neurodevelopmental disorders. (Doc. 10-2, at 17-18).

In determining step three, the ALJ addressed the six domains of functioning and concluded that K.G.L. does not have an impairment or combination of impairments that functionally equals the severity of one of the listed impairments. (Doc. 10-2, at 18). The ALJ concluded that K.G.L. has: (1) no limitation in acquiring and using information; (2) less than a marked limitation in attending and completing tasks; (3) less than a marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than a marked limitation in the ability to care for himself; and (6) no limitation in health and physical well-being. (Doc. 10-2, at 19). Based on this analysis, the ALJ concluded K.G.L. has not been disabled, as defined by the Social Security Act, since June 4, 2019, the date the application was filed. (Doc. 10-2, at 23).

## IV.    DISCUSSION

Light raises two issues on appeal. (Doc. 13, at 1-2). First, she contends that the ALJ "erred and abused his discretion by failing to properly consider [K.G.L.'s] limitations under the Functional Domains, when considering [his] . . . severe impairments." (Doc. 13, at 1). Additionally, Light asserts that the ALJ erred in relying on the findings of the State Agency

Consultants as opposed to the findings in the Childhood Disability Evaluation Form from K.G.L.'s treating source, Shannon Harper. (Doc. 13, at 2). The Commissioner argues that substantial evidence supports the ALJ's decision. (Doc. 16, at 32). The Court concludes that substantial evidence supports the ALJ's decision.

A. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION THAT K.G.L.'S SEVERE IMPAIRMENTS DO NOT FUNCTIONALLY EQUAL A LISTING.

First, Light argues that "[t]he ALJ erred and abused his discretion by failing to properly consider [K.G.L.'s] limitations under the Functional Domains, when considering" his severe impairments as identified by the ALJ, including his autism spectrum disorder, speech and language impairment, ADHD, disruptive mood dysregulation disorder, oppositional defiant disorder, and depressive disorder. (Doc. 13, at 13). Light argues that the ALJ failed to consider K.G.L.'s medical and school records, Light's testimony, and K.G.L.'s significant limitations from ongoing issues which indicates at least a finding of marked limitations in the functional domains of (1) acquiring and using information and (2) interacting and relating with others. (Doc. 13, at 16-18). Further, Light contends that the ALJ "did not make any specific findings regarding the individual domains" and that he focused on K.G.L.'s improvement "as opposed to considering the record as a whole." (Doc. 13, at 11, 16).

Although the ALJ did not individually address each functional domain in a separate paragraph, "an ALJ is not required 'to use particular language or adhere to a particular format in conducting [the] analysis,' the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Monique Myers on behalf of F.W. v. Saul,* No. 2:17-CV-13530, 2020 WL 6042318, at *2 (D.N.J. Oct. 13, 2020) (citing *Jones v.*

- 7 -

*Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000))); *see K.K. o/b/o K.S. v. Comm. of Soc. Sec.,* No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). In his opinion, the ALJ made a distinct finding for each functional limitation. (Doc. 10-2, at 19).

Light argues that the ALJ "failed to properly consider the minor child's ongoing insomnia and sleep issues, and the impact upon his overall behavior. (Doc. 13, at 18). In so far as Light is arguing that K.G.L.'s insomnia should have been considered a severe impairment, "any failure to mention [K.G.L.'s] additional medical issues at step two was harmless error, if any" as the ALJ found that K.G.L. had multiple severe impairments and proceeded with his evaluation. (Doc. 10-2, at 17); *Rodriguez v. Colvin*, No. CV 14-6461, 2017 WL 462630, at *6 (D.N.J. Feb. 3, 2017) (citing, *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."); *Wells v. Acting Comm'r of Soc. Sec.*, No. 15-6048, 2016 WL 6824369, at *4 (D.N.J. Nov. 18, 2016)).

Further, "the ALJ is not required to discuss every single piece of evidence in the record, and the ALJ considered and discussed a significant amount of medical evidence in his opinion." *Rodriguez*, 2017 WL 462630, at *7 (citing *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[T]here is no indication that, despite not expressly mentioning [K.G.L.'s insomnia,] the ALJ did not take [it] into account." *Rodriguez*, 2017 WL 462630, at *7 (citing *Bales v. Colvin,* 576 F. App'x 792, 799 (10th Cir. 2014) (holding that despite the ALJ's failure to take numerous alleged impairments into account, remand was not warranted because the ALJ had recited that he considered all symptom and appeared to have considered all of the

- 8 -

medical evidence). The ALJ considered and cited to multiple documents mentioning K.G.L.'s issues sleeping. (Doc. 10-2, at 22; *e.g.* Doc. 10-7, at 136, 138, 145). Finally, Light has not demonstrated how K.G.L.'s trouble sleeping "inhibited his functioning in a manner that would have changed the ALJ's" assessment in the domains of acquiring and using information or interacting and relating with others. *Rodriguez*, 2017 WL 462630, at *7. "If a claimant fails to present evidence demonstrating '*how* [he] might have prevailed . . . if the ALJ's analysis had been more thorough,' remand is inappropriate. *Rodriguez*, 2017 WL 462630, at *7 (quoting *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (emphasis in original).

Here, Light merely states that K.G.L.'s "ongoing insomnia and sleep issues . . . impact . . . his overall behavior." (Doc. 13, at 18). Such a statement is a "generalized response" insufficient to mandate remand. *See Rutherford*, 399 F.3d at 553 (holding that "an assertion that [claimant's] weight makes it more difficult for her to stand, walk and manipulate her hands and fingers" was not enough to demonstrate that the ALJ's consideration of the claimant's obesity would have "affect[ed] the five-step analysis"); *Brown v. Colvin,* No. 15-0992, 2016 WL 6652360, at *2 (M.D. Pa. Nov. 10, 2016) (same); *see also Bales*, 576 F. App'x at 799 (holding that any error was harmless because the claimant failed to show that any of her additional conditions actually affected her functioning); *Rodriguez*, 2017 WL 462630, at *7 (claimant failed to allege that his insomnia impacted his ability to function and was not entitled to remand).

As discussed *infra*, the ALJ considered K.G.L.'s medical records, school records, and Light's testimony when evaluating K.G.L.'s functional domains. (Doc. 10-2, at 19-23). Further, the ALJ cited to the record as a whole as he discussed K.G.L.'s treatment notes

- 9 -

indicating improvement along with evidence demonstrating K.G.L.'s impairments. (Doc. 10-2, at 19-23). To the extent Light asks the Court to re-weigh the record evidence or make new factual findings, the Court may not invade the ALJ's province as a finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion would have been reached, but whether substantial evidence supported the ALJ's decision." *See Daub v. Colvin*, No. 3:15-CV-1066, 2015 WL 8013037, at *9 (M.D. Pa Dec. 7, 2015).

Therefore, the ALJ cited to substantial evidence when determining that K.G.L. has no limitation in acquiring and using information and less than a marked limitation in and relating to others. (Doc. 10-2, at 19-23).

**1. Substantial evidence supports the ALJ's finding that K.G.L. has no limitation in the functional domain of acquiring and using information.**

Light argues that the ALJ erred in finding that K.G.L. has no limitation in acquiring and using information. (Doc. 13, at 16). Light's brief lacks a specific argument as to which limitations the ALJ failed to reasonably consider for this functional domain and thereby fails to show error. *See Hutcheson v. Berryhill*, No. 3:16-CV-2023, 2017 WL 3581675, at *26 (M.D. Pa. Aug. 18, 2017) (finding that the Plaintiff needed to specify how the ALJ erred in a functional domain analysis). The limitations that Light mentions that appear related to the domain of acquiring and using information are: K.G.L.'s test scores, language scores, behavior during testing, and overall behavioral issues. (Doc. 13, at 16-18). The Commissioner argues that "the ALJ made a specific finding" in this domain and conducted a "fulsome review of the record" when determining K.G.L.'s limitations in acquiring and using information. (Doc. 16, at 18).

When evaluating a child's limitations in the domain of acquiring and using information, the ALJ must consider how well the child acquires or learns information, and how well the child uses the information he or she has learned. 20 C.F.R. § 416.926a(g). Some examples of limitations in this domain include: not demonstrating an understanding of words about space, size, or time; an inability to rhyme words or the sounds in words; having difficulty recalling important things that were learned in school the previous day; difficulty in solving mathematics questions; only talking in short, simple sentences; and having difficulty explaining what he means. 20 C.F.R. § 416.926a(g)(3)(i)-(v).

Light argues that K.G.L.'s identified severe impairments of autism spectrum disorder, speech and language impairment, ADHD, disruptive mood dysregulation disorder, oppositional defiant disorder, and depressive disorder warrant a finding of a marked limitation in the functional domain of acquiring and using information. (Doc. 13, at 14-16). However, the ALJ addressed K.G.L.'s severe impairments through substantial evidence from the record in deciding that he has no limitation in acquiring and using information. (Doc. 10-2, at 19, 22-23).

The ALJ discussed relevant record evidence relating to the applicable functional domain in reaching his determination. (Doc. 10-2, at 19, 22-23). Specifically, the ALJ stated that K.G.L. "was able to remain in the regular classroom for a majority of the school day and to maintain his grades despite the presence of his impairments" and the use of the medications to manage his impairments. (Doc. 10-2, at 22). The ALJ also considered Light's testimony; the evaluations from the school district; K.G.L.'s education records; the medical opinions of Dr. Gavazzi, Psy.D., Dr. Fink, Ph.D., Dr. Ledermann, Psy.D, Ms. Harper, CRNP; and the opinion of K.G.L.'s kindergarten teacher Ms. Fubig. (Doc. 10-2, at 19-23).

First, the ALJ noted Light's testimony that K.G.L. had difficulty communicating, speaking in sentences, and was not easily understood. (Doc. 10-2, at 19; Doc. 10-6, at 36-37). The ALJ also noted Light's report that K.G.L.'s "ability to progress in learning is limited in that he cannot ask what words mean, define common words, read capital letters, or understand a joke and does not know his birthday or telephone number." (Doc. 10-2, at 19; Doc. 10-6, at 38). Further, the ALJ considered Light's testimony that K.G.L. "can only pay attention for fifteen minutes at a time." (Doc. 10-2, at 20; Doc. 10-6, at 40).

The ALJ noted that K.G.L.'s school records indicate that he "had average school readiness per the BRSA-3" in March 2019, but that he tested below age level expectations for speech and language and qualified for speech and language services. (Doc. 10-2, at 20; Doc. 10-7, at 10). During a multidisciplinary evaluation, K.G.L. was easily distracted, his speech was difficult to understand due to disarticulation, and he had difficulty comprehending instructions. (Doc. 10-2, at 20; Doc. 10-7, at 225).

The ALJ also considered K.G.L.'s treatment records. (Doc. 10-2, at 20). In April 2019, K.G.L. demonstrated normal findings during his mental status examinations, except that he had limited insight and judgment. (Doc. 10-2, at 20; Doc. 10-7, at 214-15). In September 2019, K.G.L. was doing well in school, making friends, and was enrolled in regular education kindergarten with speech and language support two times per week. (Doc. 10-2, at 21; Doc. 10-7, at 188, 282-285). In December 2019, K.G.L. was placed on an Individualized Education Program ("IEP") and was still able to remain in the classroom 97% of the day. (Doc. 10-2, at 21; Doc. 10-7, at 43, 49).

A speech and language evaluation from September 2019, noted that K.G.L. was able to communicate in an effective manner and comprehend and follow directions appropriately,

although he had a mild delay in his articulation skills. (Doc. 10-2, at 21; Doc. 10-7, at 282-285). Further notes indicated that K.G.L.'s focus and attention remained well managed, however, Light reported that K.G.L.'s medication would not last through the afternoons and, as a result, his medication was adjusted. (Doc. 10-2, at 21; Doc. 10-7, at 164). K.G.L. began full-day kindergarten in February 2020, and although he transitioned well to kindergarten, he was having difficulty at home including a lack of desire to complete his homework or chores. (Doc. 10-2, at 21; Doc. 10-7, at 155). K.G.L. had multiple adjustments to his medications and in April 2020, Light noted K.G.L.'s improvement in his focus, attention, and hyperactivity, although he was still not very engaged in schoolwork. (Doc. 10-2, at 21; Doc. 10-7, at 137-38). Further treatment records indicated that K.G.L. was better behaved, less impulsive, better able to focus on a task, and less hyperactive. (Doc. 10-2, at 22; Doc. 10-7, at 136).

The ALJ also considered the opinions of Dr. Gavazzi, Dr. Fink, Dr. Ledermann, Ms. Starling, Ms. Fubig, and Ms. Harper. (Doc. 10-2, at 22-23). First, the ALJ found the state agency consultants Dr. Gavazzi, and Dr. Fink's, opinion that K.G.L. had no limitations in his ability to acquire and use information persuasive as they were consistent with the record and supported, in part, by K.G.L.'s improvement in his academics with the use of medication. (Doc. 10-2, at 22; Doc. 10-3, at 9, 24). Next, the ALJ considered the opinion of Dr. Ledermann, a consultative examiner, regarding the functional domain of acquiring and using information that stated that K.G.L. was currently in regular education classes with speech therapy and that he had a "head start" due to his speech therapy in the past and found it persuasive. (Doc. 10-2, at 22-23; Doc. 10-7, at 296). Next, the ALJ considered the opinion of Ms. Starling, a consultative examiner, that K.G.L. had a mild delay in articulation skills that were not likely to severely impact his educational success or ability to communicate with his

peers and found her opinion to be persuasive. (Doc. 10-2, at 23; Doc. 10-7, at 284-85). Next, the ALJ considered the opinion of Ms. Fubig, K.G.L.'s kindergarten teacher. (Doc. 10-2, at 23). Ms. Fubig opined that K.G.L. has no limitation in his ability to acquire and use information or any of the other functional domains, however, the ALJ found that the record supports more restrictive findings and found her opinion generally not persuasive specifically noting K.G.L.'s behavioral symptoms associated with his impairments and academic accommodations. (Doc. 10-2, at 23; Doc. 10-6, at 67). Finally, the ALJ considered the opinion of Ms. Harper, K.G.L.'s treating physician. (Doc. 10-2,a at 23). Ms. Harper stated that K.G.L. has a marked limitation in his ability to acquire and use information. (Doc. 10-2, at 23; Doc. 10-7, at 231). The ALJ found Ms. Harper's opinion unpersuasive as the record demonstrates that K.G.L. "progressed appropriately in the academic setting." (Doc. 10-2, at 23).

The ALJ considered Light's testimony, K.G.L.'s academic record, K.G.L.'s treatment notes, and multiple opinions regarding the functional domain of acquiring and using information. (Doc. 10-2, at 19-23). Accordingly, the ALJ cited to substantial evidence indicating no limitations in the area of acquiring and using information. (Doc. 10-2, at 19).

### 2. Substantial evidence supports the ALJ's finding that K.G.L. has less than a marked limitation in the functional domain of interacting and relating with others.

Light argues that the ALJ erred in finding that K.G.L. suffers from less than marked limitation in interacting and relating with others. (Doc. 13, at 18). Light's brief lacks a specific argument as to which limitations the ALJ failed to reasonably consider for this functional domain and thereby fails to show error. *See Hutcheson*, 2017 WL 3581675, at *26. The limitations that Light mentions that appear related to the domain of acquiring and using

- 14 -

information are: K.G.L.'s language scores, fights with his siblings, being impulsive and argumentative, sensitivity to loud noises, rough behavior, tantrums, failure to listen to rules, constant movement and making noises, trouble communicating, actions when he becomes frustrated, and trouble doing chores. (Doc. 13, at 16-17).

When evaluating a child's limitations in the area of "interacting and relating with others" an ALJ considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his or her community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). Examples of limitations in this domain include: having no close or age-appropriate friends; avoiding or withdrawing from people the child knows; being overly anxious or fearful when meeting new people or trying new experiences; difficulty cooperating with others; having difficulty playing games or sports with rules; and difficulty communicating with others (i.e., difficulty in using appropriate verbal and nonverbal cues when expressing him or herself, carrying on a conversation, or asking others for assistance); and difficulty in speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3)(i)-(vi); SSR 09-5p, 2009 WL 396026 at *6-7.

Light argues that K.G.L.'s identified severe impairments of autism spectrum disorder, speech and language impairment, ADHD, disruptive mood dysregulation disorder, oppositional defiant disorder, and depressive disorder warrant a finding of a marked limitation in the functional domain of interacting and relating with others. (Doc. 13, at 13). However, the ALJ addressed K.G.L.'s severe impairments through substantial evidence from the record in deciding that he has less than marked limitations in interacting and relating with others. (Doc. 10-2, at 19-23).

The ALJ discussed relevant record evidence relating to the applicable functional domain in reaching his determination. (Doc. 10-2, at 19, 22-23). Specifically, the ALJ stated that "given the mood swings and temper tantrum reflected in the record, as well as the improvement in his symptoms with medication adjustments, K.G.L. has a less than marked limitation in interacting with others. (Doc. 10-2, at 22). The ALJ also considered Light's testimony; the evaluations from the school district; K.G.L.'s education records; the medical opinions of Dr. Gavazzi, Dr. Fink, Dr. Ledermann, and Ms. Harper; and the opinion of K.G.L.'s kindergarten teacher Ms. Fubig. (Doc. 10-2, at 19-23).

First, the ALJ noted Light's testimony that K.G.L. had difficulty communicating, speaking in sentences, and was not easily understood. (Doc. 10-2, at 19; Doc. 10-6, at 36-37). The ALJ also noted Light's report that K.G.L.'s "impairments impacted his behaviors with other people, as he did not enjoy being with other children his same age and could not share his toys, take turns, play board games, and be affectionate towards others." (Doc. 10-2, at 19; Doc. 10-6, at 38).

Next, The ALJ considered K.G.L.'s treatment records. (Doc. 10-2, at 20-22). In March 2019, K.G.L. underwent a multidisciplinary evaluation in which K.G.L. was diagnosed with moderate autism spectrum disorder. (Doc. 10-2, at 20; Doc. 10-7, at 225). It was noted that he had deficits in social and emotional reciprocity, difficulty maintaining relationships, and restricted and repetitive behaviors. (Doc. 10-2, at 20 Doc. 10-7, at 223). Additionally, specific notations stated that K.G.L. intruded on the examiner's personal space, grabbed items without permission, displayed difficulty transitioning from one activity to the next, and played roughly with toys used during the session. (Doc. 10-2, at 20; Doc. 10-7, at 225).

- 16 -

In April 2019, K.G.L. continued to receive psychiatric services, however Light noted that he would become irritable in the afternoons, progressing to tantrums in the evening, but he was not displaying behavior concerns at school. (Doc. 10-2, at 20; Doc. 10-7, at 214). In July 2019, Light noted continued defiant behavior specifically that K.G.L. does not listen to authority within the home and becomes upset when he does not get his way. (Doc. 10-2, at 20; Doc. 10-7, at 178-79). K.G.L.'s medications were increased and his behaviors improved, although he was still experiencing some agitation and an unwillingness to play with his siblings. (Doc. 10-2, at 20-21; Doc. 10-7, at 179, 183). In September 2019, K.G.L. was doing well in school and was making friends. (Doc. 10-2, at 21; Doc. 10-7, at 188).

A speech and language evaluation from September 2019, noted that K.G.L. was able to communicate in an effective manner and comprehend and follow directions appropriately, although he had a mild delay in his articulation skills. (Doc. 10-2, at 21; Doc. 10-7, at 282-285). In November 2019, K.G.L. exhibited high anxiety and low frustration tolerance with loud noises, however, his behaviors were manageable and he was without significant emotional outbursts. (Doc. 10-2, at 21; Doc. 10-7, at 242). Light reported that K.G.L.'s medication would not last through the afternoons and his medication was adjusted as a result. (Doc. 10-2, at 21; Doc. 10-7, at 164, 167). In January 2020, K.G.L. was doing well on his medication adjustments, but would still present defiant and oppositional behavior when he did not get his way and it was recommended that he engage in outpatient or in-home therapy. (Doc. 10-2, at 21; Doc. 10-7, at 162). K.G.L. began full-day kindergarten in February 2020, and transitioned well although he continued to exhibit tantrums and noncompliance in the afternoons. (Doc. 10-2, at 21; Doc. 10-7, at 155). K.G.L. had difficulty within the home and it was again recommended that he engage in outpatient or in-home therapy. (Doc. 10-2, at

21; Doc. 10-7, at 157). K.G.L.'s medication was adjusted, however in March 2020, he had a behavioral incident at school with another student. (Doc. 10-2, at 21; Doc. 10-7, at 145, 158). K.G.L. had his medication adjusted again and in April 2020, Light noted K.G.L.'s improvement in his focus, attention, and hyperactivity. (Doc. 10-2, at 21; Doc. 10-7, at 138). Further treatment records indicated that K.G.L. was better behaved, less impulsive, better able to focus on a task, and less hyperactive. (Doc. 10-2, at 22; Doc. 10-7, at 138). In July 2020, K.G.L. continued to have some periods of irritability, emotional outbursts at home, and became aggressive with his siblings, although Light continued to report that his focus, attention, impulsivity, and hyperactivity were better. (Doc. 10-2, at 22; Doc. 10-7, at 126).

The ALJ also considered the opinions of Dr. Gavazzi, Dr. Fink, Dr. Ledermann, Ms. Starling, Ms. Fubig, and Ms. Harper. (Doc. 10-2, at 22-23). First, the ALJ found Dr. Gavazzi and Dr. Fink's opinion that K.G.L. had marked limitations in his ability to interact with others persuasive and consistent with the record, supported by K.G.L.'s improvement in his behavioral symptoms with the use of medication. (Doc. 10-2, at 22; Doc. 10-3, at 10, 25). Next, the ALJ considered the opinion of Dr. Ledermann, regarding the functional domain of interacting and relating with others that stated that K.G.L. has been diagnosed with Level One Autism spectrum disorder in the past and demonstrated physical aggression, verbal aggression, and daily angry outbursts. (Doc. 10-2, at 22-23; Doc. 10-7, at 297). Next, the ALJ considered the opinion of Ms. Starling that K.G.L. had a mild delay in articulation skills that were not likely to severely impact his educational success or ability to communicate with his peers and found her opinion to be persuasive. (Doc. 10-2, at 23). Next, the ALJ considered the opinion of Ms. Fubig, K.G.L.'s kindergarten teacher. (Doc. 10-2, at 23). Ms. Fubig opined that K.G.L. has no limitation in his ability to interact and relate with others stating that it has

not been necessary to implement behavior modification strategies for K.G.L. and that she can understand his speech on the first attempt one-half to one-third of the time. (Doc. 10-6, at 69-70). The ALJ found that the record supports more restrictive findings and found Ms. Fubig's opinion generally not persuasive specifically noting K.G.L.'s behavioral symptoms associated with his impairments. (Doc. 10-2, at 23). Finally, the ALJ considered the opinion of Ms. Harper that K.G.L. has a marked limitation in his ability to interact and relate with others. (Doc. 10-2, at 23; Doc. 10-7, at 232). The ALJ found Ms. Harper's opinion unpersuasive as the record demonstrates that K.G.L. "experienced improvement in his behavioral symptoms with the use of medications." (Doc. 10-2, at 23).

The ALJ considered Light's testimony, K.G.L.'s academic record, K.G.L.'s treatment notes, and multiple opinions regarding the functional domain of interacting and relating with others. (Doc. 10-2, at 19-23). The ALJ compared the evidence supporting a finding of some limitation with the countervailing evidence. (Doc. 10-2, at 19-23). Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo*, 383 U.S. at 620. The ALJ also adequately explained his decision, because he gave "not only an expression of the evidence [he] considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705. Thus, substantial evidence supports the ALJ's finding of a less-than-marked limitation in the domain of interacting and relating with others. (Doc. 10-2, at 19).

B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S CONSIDERATION OF MS. HARPER'S OPINION.

Light contends that the ALJ erred and abused his discretion by not affording proper weight to the Childhood Disability Evaluation Form completed by Shannon Harper, K.G.L.'s treating source. (Doc. 13, at 19-20).

The ALJ adequately considered the opinion of Ms. Harper, CRNP. (Doc. 10-2, at 23). As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is

the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-07. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505; *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.,* 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

Under the new regulations, Ms. Harper's opinion is an acceptable medical source as she is a licensed advanced practice registered nurse, or other licensed advanced practice nurse with another title, for impairments within . . . her licensed scope of practice." (Doc. 10-7, at 230); 20 C.F.R. § 416.902(a)(1); *c.f. August v. Kijakazi*, 2021 WL 4453669, at *6 (D. Del. Sept.

29, 2021) ("[N]urse practitioners were not considered acceptable medical sources for claims filed before March 27, 2017."). However, under the new regulations, treating physicians are "not entitled to any deference given [his or her] status as [a] 'treating physicia[n].'" *See Duhl v. Kijakazi,* No. 20-1123, 2021 WL 5909819, at \*3 (W.D. Pa. Dec. 14, 2021); (Doc. 12-8, at 70).

The ALJ considered the opinion of Ms. Harper and found that her opinion was not persuasive. (Doc. 10-2, at 23). The ALJ stated

> The undersigned considered the opinion of Shannon Harper, CRNP. On October 1, 2020, Ms. Harper determined [K.G.L.'s] conditions functionally equaled a listing, as he had marked limitations in his ability to acquire and use information and in interacting and relating with others and less than marked limitations in attending and completing tasks, moving about manipulating objects, and caring for himself, but no limitations in his health and physical well-being (Exhibit 14F). This opinion is not supported by or consistent with the medical evidence of record, as it is more restrictive than the record supports. Specifically, the record notes that [K.G.L.] experienced improvement in his behavioral symptoms with the use of medications. In addition, the findings are inconsistent with treatment records that show [K.G.L.] progressed appropriately in the academic setting. Therefore, this opinion is not persuasive.

(Doc. 10-2, at 23; Doc. 10-7, at 229-33).

Ms. Harper opined that K.G.L. had marked limitations in the functional domains of acquiring and using information and in interacting and relating with others; less than marked limitations in attending and completing tasks, moving about and manipulating objects, and caring for himself; and no limitation in his health and physical well-being. (Doc. 10-2, at 231; Doc. 10-7, at 231-233). The ALJ discussed the specific findings of Ms. Harper's Childhood Disability Evaluation, but found them to be inconsistent and unsupported by the record as they are "more restrictive than the record supports." (Doc. 10-2, at 23). Specifically, the ALJ noted K.G.L.'s behavioral improvement with the use of medication and his progress in an academic

setting. (Doc. 10-2, at 23). Thus, the ALJ discussed the consistency and supportability of Ms. Harper's opinion and compared her findings of marked limitations with other evidence in the record. (Doc. 10-2, at 23; Doc. 10-7, at 231).

The ALJ also discussed the opinion of Dr. Ledermann and found that it was "supported by and consistent with the record." (Doc. 10-2, at 22-23). Although the form completed by Dr. Ledermann did not include an option to note the severity of K.G.L.'s limitations, she still provided notations under each functional domain. (Doc. 10-7, at 296-99). First, for acquiring and using information, Dr. Ledermann stated that K.G.L. is currently in regular education classes with speech therapy and that he has a "head start" due to his past speech therapy. (Doc. 10-7, at 296). Second, for attending and completing tasks, Dr. Ledermann noted that K.G.L. has "ADHD comb type." (Doc. 10-7, at 297). Third, for interacting and relating with others, Dr. Ledermann opined that K.G.L. has a previous diagnosis of Level One Autism Spectrum Disorder, presents physical and verbal aggression, and daily angry outbursts. (Doc. 10-7, at 297). Fourth, Dr. Ledermann had no concerns regarding K.G.L.'s ability to move about and manipulate objects. (Doc. 10-7, at 298). Fifth, Dr. Ledermann stated that K.G.L. has "ADHD[,] difficulty with interaction without [sic] [, and] problems with regulation on emotions. (Doc. 10-7, at 298). Finally, Dr. Ledermann noted no concerns with K.G.L.'s health and physical well-being. (Doc. 10-7, at 299).

Light argues that Dr. Ledermann's opinion supports Ms. Harper's opinion as "the issues noted by [her] appear to be serious and severe in nature." (Doc. 13, at 23). However, as noted above, Dr. Ledermann does not state that K.G.L.'s limitations are marked so as to support Ms. Harper's findings of the same. Further, the statements by Dr. Ledermann appear to support the ALJ's findings. Dr. Ledermann's opinion regarding K.G.L.'s regular education

classes, speech therapy, and "head start" could reasonably support the ALJ's finding of no limitation in acquiring and using information. (Doc. 10-2, at 19; Doc. 10-7, at 296). Next, Dr. Ledermann notes K.G.L.'s diagnoses supporting something above a finding of no limitation regarding attending and completing tasks, interacting and relating with others, and his ability to care for himself. (Doc. 10-7, at 297-98). Considering Dr. Ledermann's opinion and the rest of the record evidence, the ALJ concluded a less than marked limitation in each domain. (Doc. 10-2, at 19). Finally, both Dr. Ledermann and the ALJ noted no concern regarding K.G.L.'s ability to move and manipulate objects and his health and physical well-being. (Doc. 10-2, at 19; Doc. 10-7, at 298-99). Thus, the ALJ considered Dr. Ledermann's opinion with the other evidence of record in determining K.G.L.'s functional limitations. (Doc. 10-2, at 19; Doc. 10-7, at 296-98).

Further, the ALJ adequately considered the supportability and consistency of Dr. Ledermann's opinion by stating:

> This opinion is supported by and consistent with the record that shows [K.G.L.] experiences behavioral symptoms associated with his impairments. It is also supported by and consistent with the record that indicates [K.G.L.] experienced some improvement in his academics and behavioral symptoms with the use of medications. Therefore, the opinion is persuasive.

(Doc. 10-2, at 22-23).

The ALJ considered Dr. Ledermann's opinion and compared it with the record evidence including the opinion of Ms. Harper. (Doc. 10-2, at 22-23). Thus, substantial evidence supports the ALJ's consideration of Dr. Ledermann's opinion. (Doc. 10-2, at 22-23).

Finally, the ALJ adequately considered the opinions of Dr. Gavazzi and Dr. Fink, the state agency consultants. (Doc. 10-2, at 23). The state agency consultants opined that K.G.L. has (1) no limitation in acquiring and using information, moving about and manipulating

objects, and health and physical well-being and (2) less than marked limitation in attending and completing tasks, interacting and relating with others, and caring for himself. (Doc. 10-3, at 10, 24-25). The ALJ stated that the state agency consultants' opinions

> are supported by and consistent with the record that shows [K.G.L.] experiences behavioral symptoms associated with his impairments. They are also supported by and consistent with the record that indicates [K.G.L.] experienced some improvement in his academics and behavioral symptoms with the use of medications. Therefore, the opinions are persuasive.

The ALJ considerations are supported by substantial evidence as he explicitly examined the supportability and consistency of the state agency consultants' opinions. *See* 20 C.F.R. § 404.1520c(b)(2).

The ALJ clearly utilized and discussed the consistency and supportability of Ms. Harper's opinion and the court may not reweigh the evidence in its determination. *See Burns, 312 F.3d at 118.* As such, substantial evidence supports the ALJ's use of the opinion of Ms. Harper as the ALJ utilized a variety of evidence from the record in his analysis of K.G.L.'s functional domains.

## V.  CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision to deny Light disability benefits be **AFFIRMED,** final judgment be issued in favor of the Commissioner, and the Clerk of Court be directed to **CLOSE** this case.

An appropriate Order follows.

Dated: August 29, 2022                            *s/ Karoline Mehalchick*
                                                            **KAROLINE MEHALCHICK**
                                                            **Chief United States Magistrate Judge**

- 25 -